KLIEBERT, Chief Judge.
This is an appeal by a mother who is aggrieved by a judgment of the lower court involving the custody of her minor daughter. The salient facts are as follows:
Bart F. Ponze (who will sometimes hereafter be referred to as the “plaintiff”) and Lynnette B. Ponze (who will hereinafter sometimes be referred to simply as the “defendant”) were married on May 20, 1984 and of the marriage was born one child, Sarah, on August 11,1989, who is the subject of the present litigation.
On October 16, 1990 the plaintiff filed suit for divorce on the ground of adultery and sought custody of the child. The defendant answered the suit, denying the allegations of adultery and likewise sought custody. Judgment was rendered on July 1, 1991, and amended on August 1, 1991, which dissolved the marriage and found the defendant to be at fault in its breakup.
Contemporaneously with the filing of the divorce action the district judge appointed Dr. William B. Janzen, clinical psychologist, to evaluate the parents as well as the child. This was done with the report showing Mr. Ponze to be 33 years old and the holder of a Master’s degree in mathematics employed at the L.S.U. Medical Center and Mrs. Ponze to be 32 years old with a B.S. degree, employed in the computer department of Ochsner Hospital. The report found both Mr. and Mrs. Ponze to be good parents, with neither being significantly better than the other and recommended joint custody with Mrs. Ponze being the primary physical custodian.
A consent judgment was signed by the district judge on January 7, 1991, which generally followed the recommendations of Dr. Janzen in that it provided for joint custody with the mother being named as primary physical custodian. Detailed and liberal visitation with the father was provided that appears to have resulted in his having the child six days in every two weeks. Also contained in the judgment was the following:
“12). In connection with the Order of October 16, 1990 regarding not removing the minor child from the state without the express consent of both parties, said Order is vacated, subject to the parties being ordered herein to make SARAH available to each other as specified in this Order. Before any significant changes in residency occur which make the current plan unworkable, then the parties will negoiate a rescheduling of visitation or seek Court modification of this order.”
On January 7, 1992 the defendant filed a “Motion to Modify Child Custody” wherein she recited that her husband, Michael Riva, had transferred his employment to Cincinnati, Ohio, necessitating “a family move on an expedited basis,” that she would be no longer employed on a full time basis, that it was in the best interest of the child that she remain with her mother and that, “in accordance with the (original) judgment” that a modification of the original plan be thus effected. The plaintiff answered seeking, among other things, an order giving him custody pending the outcome of the proceedings and, ultimately, full custody. Following a status conference held on January 27, 1992 the child was ordered returned to the jurisdiction of the court and Dr. Janzen was again appointed to conduct an evaluation.
On March 4, 1992 Dr. Janzen rendered his report wherein he recommended that the child be placed in the primary physical custody of Mr. Ponze. The matter was heard on March 25, 1992 and on April 9, 1992 judgment was rendered naming the father as primary physical custodian with extensive visitation privileges accorded the mother who, as stated at the outset, has appealed.
It appears that from the time the child was eight weeks old until the defendant left the state, the child was cared for by a Cathy Monahan, a friend of the parents, while they were at work. Mr. Ponze testi *722 fied that he would continue this routine until the child was ready for school in September of 1992. Mrs. Ponze testified that she was pregnant and did not expect to return to work for sometime following the birth of the child, thus enabling her to be at home with the child Sarah for an indefinite time into the future.
The record in this matter is remarkable in that there are no significant factual matters which are the subject of serious dispute. There is no contention made by either parent that the other is unfit; indeed, Dr. Janzen finds them both to be good parents, with the child having a strong attachment to both, she having spent about 60% of the time with the mother and 40% of the time with the father prior to the move out of state.
As opposed to the admirable qualities apparently attributed by all concerned to the plaintiff and the defendant, the record discloses the following with respect to the defendant’s new husband, Mr. Riva:
He has had an alcohol abuse problem, had treatment as recommended by his former employer, but has continued to drink on occasion. The defendant is his fifth wife, although he led her to believe she was his fourth and he never told her of his problem with alcohol. His rate of remarriage was rapid, i.e., after his first wife he remarried in two months, after his second wife he remarried in four months, after his third wife he remarried in two days and, after his fourth wife he remarried in two months.
Mr. Riva had not maintained close ties with his natural child of a previous marriage. His work history was checkered, having had different jobs in Alabama, New Orleans, North Carolina and Ohio. He has no family in the area where he and the defendant intend to reside, nor does she.
The conclusion of Dr. Janzen, as stated in his report of March 4, 1992 is as follows:
“Mr. Ponze has a stable past involving geographical location as well as job. Mr. Ponze also has an extended family in the New Orleans area which contributes significantly to stability. Mr. Riva and Ms. Bauman do not have any relatives in the Cincinnati, Ohio area. There is no evidence to suggest that Ms. Bauman and Mr. Riva are abusive individuals. However, their history does suggest that there is a much greater potential for disruption to Sarah’s life then (sic) Mr. Ponze’s history. Structure is definitely an important factor if a child is to grow up in a psychologically healthy manner. It appears that Mr. Ponze is able to offer this to a much greater extent that (sic) Ms. Bauman and Mr. Riva. Thus, at the present time it appears that it would be in Sarah’s best interest to be in the primary physical custody of the father. However, I do feel that the mother should have liberal visitation with Sarah. Given that it will be at least several years before Sarah begins school the visitation schedule could certainly be flexible. However at the same time Sarah should not be shuttled bach (sic) and forth on a routine basis.”
The findings and conclusion of Dr. Jan-zen were in large part concurred in by Mr. Elliot S. Lavigne, social worker accepted by the court below as an expert in child custody and evaluation matters.
Dr. Camilla Cowardin, psychiatrist, testified on behalf of the defendant. Her testimony was simply that she had read Dr. Janzen’s report and did not think it contained enough evidence to warrant his concluding that custody should be changed. She had never met Mr. Ponze and did not evaluate or examine either the child or its mother. She acknowledged that she could not professionally recommend either a retention or change of custody.
The trial judge rendered written reasons for judgment, concluding as follows:
“Based on Dr. Janzen’s evaluation, the Court awards primary physical custody of the minor child to the father, Bart P. Ponze. The Court finds that Mr. Ponze’s lifestyle and employment status present a more stable environment for the child. Moreover, all of the minor child’s extended family are living in the New Orleans area. The Court notes that, prior to the move to Kentucky, Mr. Ponze had physical custody of the child almost half of the time.
*723 The Court gives substantial weight to the recommendations of Dr. Janzen, who has the benefit of having conducted evaluations of the child in 1990 and against (sic) in 1992. The Court also relies on the recommendations of Dr. Elliott Levine (sic), the Social Worker employed by the district court in domestic matters.”
The appellant assigns as error the failure of the appellee to sustain the heavy burden imposed in custody matters by the holding of our Supreme Court in Bergeron v. Ber-geron, 492 So.2d 1193 (La.1986). We fail to see the applicability of the Bergeron case or others cited by appellant to the present litigation. In the Bergeron line of cases one party was seeking a change of custody by reasons of circumstances or inappropriate conduct of the other party. Here, as seen by the quoted portions of the rule brought by appellant herself, the matter was presented to the court in accordance with the procedure set forth in the consent judgment entered into by both parties and by which both were bound. Neither party had imposed on it a greater burden than that of the other. Their standing before the court below was equal and the court made its decision based upon simply what was in the best interest of the child which was entirely proper.
We find no error in the court’s findings or conclusions and the judgment appealed from is, therefore, affirmed.
AFFIRMED.